John A. McCAULLEY, Jr., Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–267.

Court of Criminal Appeals of Oklahoma.

Feb. 5, 1988.

Lisbeth McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

John A. McCaulley, Jr., appellant, was tried by jury and convicted of Robbery With a Firearm [21 O.S.Supp.1982, § 801], in Case No. CRF–84–183, in the District Court of Cleveland County, the Honorable E.M. McDanel, District Judge, presiding. The jury set punishment at thirty (30) years imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

On November 3, 1983, appellant knocked on the locked storm door of Mrs. Teresa Doughty's home and asked to speak to Mr. Doughty. Mrs. Doughty unlocked and opened the door to better hear the appellant, at which time he forced his way into the house, pulled a gun from under his shirt, stuck the gun to Mrs. Doughty's head, and demanded her jewelry. Appellant pushed Mrs. Doughty down the hall to the master bedroom, where she gave appellant all of her jewelry. Appellant then forced Mrs. Doughty into the bathroom and fled. Mrs. Doughty's ten-year-old daughter fled the house during the robbery and hid at a neighbor's house.

Based upon Mrs. Doughty's description of the robber, the police showed her a photographic lineup at her house. She picked the appellant's picture out of the lineup. The Moore Police arrested the appellant, and he participated in several physical lineups in the Cleveland County jail in relation to twenty-two other armed robberies. The Oklahoma City police asked that appellant be transferred to the Oklahoma County jail to participate in a physical lineup for the Doughty robbery. When Mrs. Doughty saw the appellant in the lineup, she immediately identified him, began to cry, became hysterical, and had to be escorted from the room. Mrs. Doughty's daughter could not identify the appellant as the robber.

At trial, appellant and his girlfriend testified that Timmy Ray Hays bragged to them that he robbed Mrs. Doughty and tried to get them to sell a ring for him similar to one of the rings stolen from Mrs. Doughty. Mr. Hays took the stand but exercised his Fifth Amendment right to not incriminate himself in response to every question concerning this robbery.

Appellant further testified that Mrs. Doughty identified him at the lineup because he sold meat to her at her house on four previous occasions. On rebuttal, Mrs. Doughty testified that her father retired from Wilson Meatpacking Co. and her brother currently worked for Wilson. Whenever she needed to buy meat, she bought directly from Wilson through her brother and never bought anything from the appellant. Mrs. Doughty testified that the only occasion appellant was in her house was the time he robbed her. She further testified that, after viewing both Mr. Hays and the appellant in open court, appellant, not Mr. Hays, robbed her.

■ For his first assignment of error, the appellant asserts that the comments he made to Sgt. Winborn at the Oklahoma County Jail while waiting to go to the lineup should have been suppressed at trial, because he was denied his right to counsel under the Fifth and Sixth Amendments of the United States Constitution. As previously mentioned, the Moore police arrested the appellant, and he participated in several lineups in Cleveland County con-

cerning twenty-two other armed robberies. Sgt. Winborn asked that appellant be transferred to the Oklahoma County jail to participate in a lineup for the Doughty robbery. Arrangements were made for a public defender to be present at appellant's lineup. Bob Ravitz of the Oklahoma County Public Defender's Office and Sgt. Winborn jointly selected the individuals who would participate in the lineup. Mr. Ravitz was also present when Mrs. Doughty picked the appellant out of the lineup as the robber.

Appellant and Sgt. Winborn were previously acquainted. While the appellant waited at the booking desk for Mr. Ravitz, Sgt. Winborn passed him in the hall. Sgt. Winborn testified:

> I was passing by him and he kind of blurted out to me, he said that 'Which robbery do you have me on this time?'
>
> I told him, I said, 'Well, your attorney will be down in just a minute.'
>
> And again, he asked me which robbery it was. I said, 'It was close to 95th and South Walker.'
>
> And he became nervous and looks at me and asks, 'Well, what if just one of the two people can identify me?' (Tr. 113–114)

Appellant testified in open court:

> I was nervous when I was first picked up. I just got out from under investigation for twenty-two robberies, I turned myself in on. I knew I didn't do no robberies. He told me this time, *when I approached him and asked him what this was about,* he said, 'Well, I've got you this time. I've got three witnesses. They say it's you.* (emphasis added)
>
> I said, 'Well, what if just one out of three pick me like the rest of them?' I said, 'Are you going to drop the charge again?'
>
> He said, 'We'll see.' (Tr. 185–186)

The right to counsel arises from two sources in the Federal Constitution: the Fifth and Sixth Amendments.

The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations. The Sixth Amendment guarantee of the assistance of counsel also provides the right to counsel at *postarraignment* interrogations. The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment; thereafter, government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies.

*Michigan v. Jackson,* 475 U.S. 625, 629–30, 106 S.Ct. 1404, 1407–08, 89 L.Ed.2d 631 (1986) (citations omitted) (emphasis added). At the time of the comments in question on February 9, 1984, no formal charges for the Doughty robbery had been filed against the appellant. Based upon the subsequent eyewitness identification, the Cleveland County District Attorney filed an information on February 10, and held a preliminary hearing on May 4, at which time appellant was bound over for trial. Thus, at the time of the conversation, the proceedings were still in the investigatory stage and no "adversary judicial proceedings" had commenced. Therefore, the appellant's Sixth Amendment right to counsel had not attached at the time of this conversation. Consequently, we confine our review to appellant's Fifth Amendment right to counsel.

■ In interpreting the accused's Fifth Amendment right to counsel during police interrogation, the Supreme Court has found that:

> In *Edwards v. Arizona* ... we held that an accused person in custody who 'has expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.'* In *Solem v. Stumes* ... we reiterated that '*Edwards* established a bright-line rule to safeguard pre-existing rights' [and] once a suspect has invoked the right to counsel, *any subsequent conversation must be initiated by him.*

*Michigan v. Jackson, supra,* 457 U.S. at 626, 106 S.Ct. 1405–06 (citations omitted)

(emphasis added). *Edwards* itself provides an exception to the prohibition on the use of custodial statements made in the absense of counsel:

> Had Edwards initiated the meeting on January 20, nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at trial. The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver. *Rhode Island v. Innis* makes this sufficiently clear.

*Edwards v. Arizona,* 451 U.S. 477, 485–86, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

> [T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.
>
> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

The record shows, and we find, that appellant initiated the conversation with the police that he now complains should have been suppressed at trial. Furthermore, we find that the appellant was not subjected to custodial interrogation. Sgt. Winborn asked appellant to wait for counsel before talking to him, and appellant asked what if only one of the witnesses could identify him. Sgt. Winborn could not know that his response to appellant's question would elicit an incriminating statement. This assignment of error is without merit.

For his second assignment of error, the appellant asserts that his Fourth and Fourteenth Amendment rights to due process were violated because the trial court failed to suppress Mrs. Doughty's in-court identification, which appellant claims was inherently unreliable because of a suggestive pretrial lineup.

■ A photograph taken of the police lineup at which Mrs. Doughty identified the appellant reveals six suspects, all of whom range in height from 5′9½″ to 5′5″ tall. Appellant is 5′5½″ tall. The weight of the suspects range from 145 lbs to 137 lbs. Appellant weighs 145 lbs. All six suspects are dressed identically in jail overalls. All are of the same race, general age and color. All participants in the lineup are bearded or moustached, except the appellant. Mrs. Doughty, however, identified her assailant as bearded and the prosecutor introduced into evidence at trial a photograph of the appellant taken shortly before the robbery in which he has a full beard. Therefore, it was appropriate for the police to include bearded suspects in the lineup despite the fact that the appellant had changed his appearance since the robbery. Additionally, appellant's counsel helped select the members of this lineup and successfully had one participant removed. We find nothing unduly suggestive about the lineup, and further find that all guidelines for participants in a lineup were met as established by *Thompson v. State,* 438 P.2d 287, 289 (Okla.Crim.App.1968).

■ Furthermore, a suggestive pretrial confrontation will not invalidate a courtroom identification that can be established as independently reliable. In determining the inherent reliability of an in-court identification, we consider: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness'

prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Bryson v. State*, 711 P.2d 932, 934 (Okla.Crim.App. 1986), *cert. denied*, 476 U.S. 1121, 106 S.Ct. 1986, 90 L.Ed.2d 668 (1986). *See also Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

In the instant case, the robbery lasted for ten minutes. Mrs. Doughty viewed the appellant throughout this period with a high degree of attention and gave the police an extremely accurate description of the appellant. There is no doubt of Mrs. Doughty's level of certainty in identifying the appellant, nor do we find an undue delay which could weaken her memory between the time of the crime and the time of the confrontation. This assignment of error is without merit.

For his third assignment of error, the appellant asserts that improper arguments by the prosecutor during closing argument denied him a fair trial. We observe initially that appellant failed to object to the remarks he now claims are error. Failure to object waives all but fundamental error, because the appellant failed to bring the error to the attention of the trial court and provide it with an opportunity to correct the error at trial. *Beshears v. State*, 738 P.2d 1375, 1378 (Okla.Crim.App.1987).

The appellant argues that the prosecutor made a prejudicial argument to the jury by commenting that "when the fifth person [in the lineup] turns around, the woman breaks down." Appellant argues that no evidence was presented as to Mrs. Doughty's emotional state at the physical lineup and this is not an inference the jury would naturally draw from Mrs. Doughty's testimony. We disagree. Sgt. Winborn testified that immediately upon identifying the appellant in the lineup, Mrs. Doughty began to cry, became hysterical, and had to be escorted from the room.

The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Both the accused and the State have a right to freely discuss the evidence from their respective viewpoints and draw inferences and deductions arising from the evidence. Only when argument by the prosecutor is grossly improper and unwarranted, and affects the accused's rights, will a reversal be based upon improper argument. *Hartsfield v. State*, 722 P.2d 717, 720 (Okla.Crim.App.1986) (Parks, P.J., dissenting on other grounds). After reviewing the comments made by the prosecutor in closing argument, we find no fundamental error arising from any of the remarks. All comments constituted reasonable inferences and deductions arising from the evidence. This assignment of error is without merit.

For his fourth assignment of error, the appellant argues the trial court erred by failing to issue a contempt citation to a subpoenaed witness who failed to appear. Appellant left subpoenas for a high school student with her parents and with her high school counselor. The witness told appellant's counsel she would not testify and she failed to appear at trial. Counsel made an offer of proof that the witness, if called, would testify that Timmy Hays told her he committed the Doughty robbery.

Title 22 O.S. 1981, § 716, provides: "Disobediance to a subpoena, or a refusal to be sworn or to testify, *may* be punished by the court or magistrate, as for a criminal contempt, in the manner provided in civil procedure." (emphasis added). Use of the word "may" in a statute, rather than the word "shall", makes the procedure permissive under general rules of construction and not mandatory. *State ex rel. Cartwright v. Oklahoma Natural Gas Co.*, 640 P.2d 1341, 1345 (Okla.1982). *See also* 25 O.S. 1981, § 1. In the instant case, the witness' testimony would have been merely cumulative. Under these circumstances, we find no abuse of discretion and no prejudice to the appellant flowing from the court's exercise of its discretion. This assignment of error is without merit.

For his fifth assignment of error, the appellant asserts the State failed to prove its case beyond a reasonable doubt, relying on *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the *Jackson* test, the critical inquiry

by a reviewing court of the sufficiency of the evidence is whether, after viewing all the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Id.* at 318–19, 99 S.Ct. 2788–89. We adopted the *Jackson* test in *Spuehler v. State,* 709 P.2d 202, 203–04 (Okla.Crim.App.1985).

The appellant and his girlfriend testified that Timmy Hays committed the robbery, while the State only presented one witness, the victim, as proof that appellant committed the crime. Appellant argues that the victim's unsupported testimony was insufficient to prove beyond a reasonable doubt that he committed the crime.

Credibility of witnesses and the weight to be given to their testimony is within the exclusive province of the jury, and the jury may believe one witness while discounting the testimony of another witness. *Renfro v. State,* 607 P.2d 703, 706 (Okla.Crim.App. 1980). This Court on review will accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Washington v. State,* 729 P.2d 509, 510 (Okla.Crim.App.1986). After viewing the evidence in the light most favorable to the State, we find a rational trier of fact could have found the appellant guilty of robbery with a firearm beyond a reasonable doubt. This assignment of error is without merit.

For his final assignment of error, the appellant argues that the cumulative effect of the errors occurring at trial mandates the case be remanded for a new trial or, in the alternative, that the sentence be modified. Having found no prejudicial errors at trial warranting reversal or modification, this assignment of error is without merit.

Accordingly, for the foregoing reasons, the judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.