**Leroy Dean DENNIS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–92–937.**

Court of Criminal Appeals of Oklahoma.

May 23, 1994.

Rehearing Denied Sept. 15, 1994.

---

17. *See supra* note 7.

Irven Box, Diane Clowdus, Oklahoma City, for defendant at trial and on appeal.

Robert H. Macy, Dist.Atty., Fern Smith, Asst. Dist. Atty., Oklahoma City, for State at trial.

Susan B. Loving, Atty. Gen. of Oklahoma, Timothy L. Faerber, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

STRUBHAR, Judge:

Appellant, Leroy Dean Dennis, was tried in the District Court of Oklahoma County for the crime of First Degree Murder, Case No. CRF–91–994. The jury found Appellant to be guilty of the crime charged, and assessed punishment at life imprisonment without possibility of parole. Appellant was sentenced accordingly.

Appellant and Janet Dennis had been married for fifteen years prior to their divorce in August of 1990. Three children, Tad, Todd and Julie, were born of this marriage. Subsequent to the divorce Appellant lived in Seiling, Oklahoma, where he worked on his ranch. Janet Dennis, who had custody of the couple's three children, lived with them in Oklahoma City.

On the evening of December 7, 1990, Tad, Todd and Julie went to bed around 9:30 p.m. Their mother was still up at this time. The next morning, Tad was awakened when his alarm sounded. He got up, dressed and went downstairs to his mother's room because he could hear her alarm going off.

When he reached down to wake his mother Tad discovered that she was not in the bed; pillows had been placed under the blanket. Tad also noticed that some of his mother's toiletries were missing from her vanity. Upon further investigation, Tad found that his mother's Blazer was not in the garage. Tad waited about thirty minutes for his mother to return before he called his father in Seiling. Appellant told Tad that he would come to Oklahoma City later that morning after he built a fence on the ranch. Appellant called family friends in Oklahoma City and asked them to go stay with the children until he arrived.

On December 9, 1990, Janet Dennis' Blazer was located in long term parking at Will Rogers World Airport. Janet Dennis, however, remained missing.

On February 14, 1991, bone fragments were found in piles of burned cedar trees on Appellant's ranch. The bones were identified as human and compatible with a woman of Janet Dennis' age. Four of the teeth recovered were compared to and found to be consistent with Janet Dennis' dental x-rays. From this, it was determined that the human remains found were those of Janet Dennis. Appellant was arrested and charged with First Degree Murder.

In his first proposition of error, Appellant alleges that he was prejudiced and denied a fair trial by the prosecution's failure to provide him with an accurate list of the witnesses to be presented in the State's case-in-chief, as is required by Article II, § 20 of the Oklahoma State Constitution. On March 5, 1992, the State filed a list of 107 witnesses, "some or all of whom" the prosecution stated would be called to testify at trial. This list was mailed to defense counsel on this same day, and received by counsel on Friday, March 6, 1992. On March 9, 1992, the morning trial was to begin, the prosecution provided defense counsel with a short list of approximately forty witnesses that the State intended to have testify. Defense counsel objected, requesting a continuance or a mistrial claiming the State had not properly complied with the constitutional mandates.

As Appellant accurately points out, Article II, Section 20 of the Oklahoma Constitution provides that in a capital case, the prosecution shall furnish to the defense, at least two days before trial is to begin, a list of witnesses that will be called in the State's case-in-chief. Appellant argues that the lengthy list of witnesses provided by the State on March 5, 1990, violated the letter and spirit of this constitutional requirement because the State actually called less than half of the persons named on this list. Thus, Appellant maintains the State's "shot gun" method of providing the required notice of witnesses was designed to cause defense counsel to spend useless time trying to prepare to confront witnesses whom the State did not intend to call.

In support of his argument, Appellant avers that the language of Article II, Section 20 requires the State to provide the defense with names of only those witnesses the State will call at trial; not those that it may or may not call to testify. However, to automatically require reversal when the State fails to call witnesses that it has endorsed would be to apply a narrow, technical rule of construction to this constitutional provision. This Court has held that such is not appropriate. *Denton v. State*, 58 Okl.Crim. 275, 53 P.2d 1136 (1936).

 This ruling does not grant prosecutors who seek to impede the efforts of defense counsel by deluging them with names of potential witnesses a means by which to accomplish this goal. Pursuant to *Allen v. District Court of Washington County*, 803 P.2d 1164, 1167 (Okl.Cr.1990), upon the request of defense counsel, the State is required to disclose to defendant, summaries of endorsed witnesses' statements. Thus, if the defense inquires, the State is basically required to reveal the purpose for which each witness has been endorsed, as well as a plethora of additional information concerning the State's case. Given the information available to the defense for the asking, there is absolutely no valid excuse for defense counsel to claim his or her preparation ef-

forts were frustrated by the excessive endorsement of witnesses by the State, or that a defendant suffered surprise by the witnesses testimony presented at trial. While it is clear to see how a defendant may suffer prejudice from the testimony of a witness who was not timely endorsed without being granted additional time to investigate, the same cannot be said of those witnesses who were timely endorsed prior to trial, as the Oklahoma Constitution requires.

■ A review of the record reveals that two discovery motions were filed in this case; the first was filed by the prosecution requesting the defense to disclose evidence in compliance with *Allen*, and the second was also filed by the State to compel the defense to comply with the original discovery motion. The record also discloses that the State filed a Notice of Open File, stating that the case file, its contents and all other evidence in the State's possession, was open to the defense for inspection and review. While it is not clear whether this case file contained all of the information the defense would have been entitled to receive under *Allen*, such is not dispositive of this issue. If the defense wanted to ensure that it would receive all permissible information, a proper discovery motion should have been filed specifically requesting as much. Accordingly, we find that the State's list of witnesses presented to the defense on March 5, 1992, was in substantial compliance with the mandates of Article II, Section 20 of the Oklahoma Constitution.

In Appellant's second proposition of error he challenges the propriety of testimony given by David Dallas, an investigator with the Oklahoma City Fire Marshall's Office. Mr. Dallas testified that he went to the burn piles located on Appellant's property approximately a year and a half after Mrs. Dennis was allegedly burned there. He had viewed pictures taken of the area at the time the burn site was discovered and noted it to be in substantially the same condition. Mr. Dallas' testimony concerned the direction of the fire, the temperature at which cedar trees burn and the number of times human bones would

have to be exposed to that temperature before they burned to the degree of the bones that were found. He also noted the temperature at which gold and silver melts. Dallas testified about the color of smoke from burning cedar with and without use of an accelerant, although he noted he had found no evidence of accelerants used at the site. Finally he testified as to the various temperature levels he would expect to occur in a pile of burning brush.

Appellant's objection to this testimony both at trial and on appeal was that it was not reliable as no proper foundation had been laid. Title 12, O.S.1991, § 1702 provides that, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise. Such testimony in the form of an opinion or inference which is otherwise admissible will not be deemed objectionable because it embraces an ultimate issue to be decided by the trier of fact." 12 O.S.1991, § 2704. This Court has previously noted that fire investigation is a highly technical field where the opinion of an expert in the area can, in some instances, be useful to the trier of fact. *Moore v. State*, 761 P.2d 866, 873–74 (Okl.Cr.1988).

■ We find in the present case, that Mr. Dallas was properly qualified as an expert in the area of fire investigation. His testimony concerned both facts and hypothetical possibilities supported by evidence. Accordingly, a proper foundation was laid for the testimony of this witness and the trial court did not abuse its discretion in allowing such. Further, defense counsel conducted an efficient cross-examination clarifying the limitations of the opinions espoused by Mr. Dallas. The jury was the ultimate judge of facts and as such could accept or reject this expert's opinions. This allegation of error is without merit.

Appellant's third proposition of error concerns a video tape found under a bathroom

vanity in Janet Dennis' house which allegedly depicted a woman who was shackled, bound, strangled and burned. It was established at trial that this tape belonged to Jim Umbenhower, Janet Dennis' boyfriend. At trial, the defense sought to introduce this tape into evidence but was not allowed to do so. Appellant argues on appeal that this ruling was in error; defense counsel should have been allowed to introduce the video tape to establish that Umbenhower had a motive to kill and burn the body of Janet Dennis.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." 12 O.S. 1991, § 2401. Questions concerning the relevancy of particular evidence are within the discretion of the trial court, and the trial court's ruling on the relevancy of evidence will not be disturbed absent a clear showing of abuse accompanied by prejudice. *Scott v. State,* 751 P.2d 758, 760 (Okl.Cr.1988). This Court has held that "evidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused." *Woodruff v. State,* 846 P.2d 1124, 1137 (Okl. Cr.1993). Further, it is not enough to show a possible motive on the part of another, "the evidence must show an overt act by the third person toward the commission of a crime." *Id.*

The evidence was adduced at trial that after Janet Dennis' divorce, she started dating Umbenhower on a regular basis. During this time he occasionally spent the night at her home and once she had spent the night with him at his bachelor officers' quarters at Fort Sill. Two letters written to Umbenhower from Janet Dennis contained inexplicit references to sexual interludes between the two of them. Appellant argues that in light of Umbenhower's relationship with the decedent, the tape was relevant to support the possibility that Janet Dennis may have been accidently killed by aggressive sex play as depicted on the video tape. He claims that the video tape should have been admitted into evidence under 12 O.S. 1991, § 2404(B) for the purpose of identifying Umbenhower as the person who killed Janet Dennis and providing his motive for doing so. Even in light of the evidence of Janet Dennis' relationship with Umbenhower, the video tape does not tend to clearly point to Umbenhower as the possible killer rather than Appellant. The premise that the video tape presented a possible motive on the part of Umbenhower is tenuous at best. However, there is no evidence of any overt act by Umbenhower toward the commission of the murder. Under these circumstances, the video tape cannot be found to have made the possibility that Umbenhower killed Janet Dennis more or less probable than it would have been without it. Accordingly, it was not an abuse of discretion for the trial court to refuse to admit the video tape into evidence.

In his fourth proposition Appellant asserts his judgment and sentence must be reversed because the evidence was insufficient to support his conviction for First Degree Murder. He specifically contends that because the cause of death was never determined, there was not sufficient evidence from which the jury could have found that Appellant caused Janet Dennis' death with malice aforethought as is required by 21 O.S.1991, § 701.7. Although the evidence presented at trial was mostly circumstantial, there was some direct evidence presented as well. Accordingly, the test to be applied in determining the sufficiency of the evidence is whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Speuhler v. State,* 709 P.2d 202 (Okl. Cr.1985).

There was evidence presented at trial that Appellant was seen outside of his part time address on Northwest 45th Street in

Oklahoma City on the afternoon of December 7, 1990. This witness saw his vehicle parked outside the residence that same evening around 7:00 p.m. Another witness testified that she started helping Appellant pack Janet's clothing into boxes the Monday after Janet disappeared. They packed her things during the entire week and put them into a closet before putting the boxes in the attic. This was well in advance of the time that Janet Dennis was determined to be dead.

The morning of December 8, 1990, when Tad discovered that his mother was missing, Tad called Appellant at his ranch in Seiling to report his mother's absence. Appellant told Tad he would come to the city later that morning after he built some fence on his property. This same morning at between 7:00 and 8:00 a.m., one of Appellant's neighbors in Seiling observed a large fire with black smoke and flames leaping about thirty to forty feet above the tree line burning on Appellant's property about one half mile away. She testified that she had seen other fires burning on Appellant's property in the past, but none as large as this.

On February 14, 1991, human bone fragments were found in three separate piles of burned cedar trees on Appellant's ranch. The bones were found to be compatible with a woman of large stature, from thirty-five to fifty years of age, who had delivered children. Four of the teeth recovered were compared to and found to be consistent with Janet Dennis' dental x-rays. Along with the bones, a piece of necklace or gold chain was found in the burn piles. There was evidence presented that Janet Dennis owned a necklace that she always wore.

As was discussed in proposition two, an investigator with the Oklahoma City Fire Marshall's Office testified that burning piles of cedar could produce sufficient heat to burn human bones to the degree of those bones found, but it would require more than one burning. He also testified that if an accelerant was used in the burning, the smoke produced would have been black. Although he noted that he found no evidence of accelerants in the burn piles, he also stated that the absence of such evidence did not dispositively indicate that no accelerants had been used because of the dissipation factor of the fuel and the length of time that had passed before the area was tested.

Evidence relevant to Appellant's possible motive to kill his wife was also introduced at trial. Both Appellant's son Tad and a neighbor testified that Appellant wanted custody of the children. Tad testified that Appellant wanted custody of all the children, especially him, so they could live in Seiling at his grandmother's house. One of Appellant's neighbors in Oklahoma City testified that Appellant was very adamant about getting custody of all the children. There was also testimony concerning Appellant's financial status. Appellant owed his wife a thirty thousand dollar settlement from their divorce and he was pursuing a bankruptcy action. Further, he had told Tad that he would not be able to make his child support payment for about two months.

Given the evidence concerning the circumstances surrounding Janet Dennis' disappearance and the eventual discovery of her remains as well as Appellant's desire to have custody of his children and the debt that he owed to his ex-wife, this Court finds that the evidence, albeit largely but not entirely circumstantial, when viewed in the light most favorable to the prosecution, is sufficient to prove beyond a reasonable doubt each element of the crime for which Appellant was convicted. This evidence supports the jury's finding that Appellant unlawfully, and with malice aforethought, killed Janet Dennis, thereby committing the crime of First Degree Murder.

■ In his final proposition of error Appellant complains that several improper comments made by the prosecutor were inflammatory and prejudicial. He first argues that the prosecutor improperly asked the jury during voir dire how they would decide hypothetical questions involving facts. Such inquiry is prohibited by Rule 6, *Rules for the District Courts of Oklahoma*, 12 O.S.1991,

Ch. 2, App. 1. Appellant argues that this type of comment was an attempt to predispose the jurors to determine the ultimate issues of fact and law in favor of the prosecution and that it violated his right to a fair trial. However, within the context of the lengthy voir dire process, we do not find that the two isolated remarks complained of impacted the jury's disposition much less violated Appellant's right to a fair trial.

■ Appellant also argues that the prosecutor made improper remarks which amounted to personal attacks on defense counsel. In the comment complained of, the prosecutor simply told the jury that on cross examination, a lawyer is entitled to ask leading questions. While personal attacks are clearly prohibited, no relief is warranted in the present case because the remarks complained of were not personal attacks on defense counsel. The comment at issue was not limited in application to defense counsel, but could be applied to the prosecution as well. Appellant's argument is without merit.

■ It is Appellant's contention that the prosecutor erred several times throughout the trial by engaging in arguments calculated to inflame the passions of the jury. The first comment complained of in this regard occurred in opening argument when the prosecutor told the jury that Janet Dennis may have been burned alive. The prosecutor also told the jury that the Dennis children were allowed by Appellant to play amongst their mother's bones in the burn piles. Finally, Appellant complains that the prosecutor improperly made references to the odor of burning flesh. It is true that this Court has held that both the State and the defense have the right to discuss the evidence from their respective viewpoints. It is only when the prosecutor's argument is grossly improper and actually affects a defendant's rights that reversal will be warranted. *McCaulley v. State*, 750 P.2d 1124, 1128 (Okl.Cr.1988). The comments complained of in this case, while designed to appeal to the passions of the jury, were inferences reasonably supported by the evidence. Further, the record reflects that defense counsel, while advancing his own inferences supported by the evidence, made clear to the jury the weaknesses in those offered by the prosecution.

■ Finally, Appellant complains the prosecutor erred by commenting that the State had proved the required elements of the crime charged and asked the jury to return a guilty verdict; he told the jury that the State expected a verdict of guilty. It is Appellant's contention that the prosecutor acted improperly by requesting that jury convict based upon his personal sense of justice. We disagree. The record reflects that within the context of the entire closing argument the prosecutor did not speak inappropriately. Rather, he simply asked the jury to return a guilty verdict based upon the State's interpretation of the evidence adduced at trial. *See Stover v. State*, 674 P.2d 566, 567–68 (Okl.Cr.1984). Accordingly, the comments complained of were not unfairly prejudicial to Appellant and did not deprive him of a fair trial.

In light of the foregoing discussion, we find Appellant's judgment and sentence should be **AFFIRMED.**

LUMPKIN, P.J., JOHNSON, V.P.J., and CHAPEL, J., concur.

LANE, J., concurs in results.