2007 OK CR 37

**Mann Shockley BLANTON, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2006–315.

Court of Criminal Appeals of Oklahoma.

Oct. 30, 2007.

---

Eric Jones, Ardmore, OK, attorney for defendant at trial.

Craig Ladd, District Attorney, Heather Cooper, Assistant District Attorney, Ardmore City, OK, attorneys for the State at trial.

Steven M. Presson, Robert W. Jackson, Jackson & Presson, P.C., Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Oklahoma Attorney General, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## SUMMARY OPINION

LEWIS, Judge.

¶1 Mann Shockley Blanton, Appellant, was convicted of First Degree Rape in violation of 21 O.S.2001, § 1114, in the District Court of Carter County, Case No. CF–2004–575, before the Honorable Lee A. Card, Associate District Judge. The jury assessed punishment at fifty (50) years, and the trial court sentenced accordingly. Blanton has perfected an appeal of the District Court's Judgment and Sentence raising the following propositions of error:

1. The DHS employee's testimony that vouched for the truthfulness of R.W.'s allegations was fundamental error that requires reversal.

2. The DHS employee's testimony about Mr. Blanton's statements to her concerning drug use and other matters violated the Fifth and Fourteenth Amendment rights of Mr. Blanton and rendered his trial fundamentally unfair.

3. Error occurred when Mr. Blanton's jury was not instructed that any sentence imposed would be subject to Oklahoma's 85% service requirement. A new sentencing trial should be ordered or the sentence modified.

4. Mr. Blanton did not receive effective assistance of counsel with regard to the issues presented in propositions one and three of this appeal.

¶2 After thorough consideration of Blanton's proposition of error and the entire record before us on appeal, including the original record, transcripts, exhibits, and briefs, we have determined that the judgment of the District Court shall be affirmed, but the sentence shall be modified due to error found in proposition two.

¶3 In proposition one, Appellant claims that the entire examination of Department of Human Services (DHS) worker Sarah Meyers contains explanations of why she believed R.W.'s allegations were true; however, he cites no examples. We find that this issue was not preserved at trial by any contemporaneous objection; therefore, we review for plain error only. 12 O.S.2001, § 2104 (proper method of preserving alleged errors at trial). This proposition is completely without merit, and because error is not plain on the record, it cannot be plain error.[1] We find that Meyers's testimony did not improperly bolster the testimony of the victim. The testimony was merely indicating the way this victim responded to the interview process. *See Davenport v. State*, 1991 OK CR 14, ¶¶ 15–17, 806 P.2d 655, 659 (similar analysis of testimony regarding child accommodation syndrome).

¶4 We find, in proposition two, that this issue was preserved at trial by a timely objection, based on the same argument raised here, which the trial court overruled. The questioning by Sarah Meyers occurred on October 26, 2004, the day after Blanton appeared in District Court for his initial appearance and while he was being held in the county jail.[2] Meyers did not advise Blanton of his Miranda[3] rights. The trial court allowed the statements to be admitted because

---

1. *Hogan v. State*, 2006 OK CR 19, ¶38, 139 P.3d 907, 923, *cert. denied*, —— U.S. ——, 127 S.Ct. 994, 166 L.Ed.2d 751 (2007) (An appellant must prove actual error which is plain or obvious, and he must show that the error affected substantial rights affecting the outcome of the proceeding.)

2. We need not determine whether this error affected Blanton's Sixth Amendment right to counsel, as a violation of the Fifth Amendment right against self incrimination did occur and the relief granted cures any possible Sixth Amendment error.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Meyers was not a "law enforcement officer."[4]

¶ 5 Meyers testified that Blanton told her that he had a pornographic magazine and he took it to the back bedroom and began masturbating. He realized that the victim was watching him, but did not know how long. He said that the victim tried to touch his penis. He explained that it was a mistake. He said that the victim "came on to him," and he wasn't going to admit to anything. He did, however, admit to Meyers that he had used marijuana before coming to the victim's house.

¶ 6 Confessions made to law enforcement, as a result of custodial interrogation, are generally inadmissible in a criminal trial unless a defendant waives his Constitutional rights. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (holding a defendant's statements given during custodial interrogation are inadmissible unless the state demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination). A "custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612.

¶ 7 The issue here is whether the incriminating statements given to DHS worker Meyers were admissible absent the giving of Miranda warnings and the waiver of Miranda rights. Clearly, Blanton was in custody for purposes of Miranda, and Blanton's statements were the result of questioning or interrogation, which leaves the issue of whether Meyers meets the definition of "law enforcement."

¶ 8 Generally, in Oklahoma, unwarned custodial statements made to private citizens not connected to law enforcement are admissible if made freely and voluntarily. Wright v. State, 2001 OK CR 19, ¶¶ 42–43, 30 P.3d 1148, 1158. Conversely, when the custodial statements are a result of interrogation (or conversation designed to elicit a response) by an agent of law enforcement, such statements are inadmissible unless the accused received a Miranda warning prior to questioning. Lewis v. State, 1998 OK CR 24, ¶ 37, 970 P.2d 1158, 1171; McCaulley v. State, 1988 OK CR 25, ¶ 9, 750 P.2d 1124, 1127; McCubbin v. State, 1984 OK CR 37, ¶ 16, 675 P.2d 461, 465–66.

¶ 9 The United States Supreme Court dealt with the issue of "agents of the State" interviewing defendants in Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).[5] The defendant in Smith was in jail awaiting trial on a first degree murder charge. The prosecution employed a psychiatrist to assess the defendant's future dangerousness, which it intended to use during the sentencing stage of trial.

¶ 10 The Court held that answers given to a psychiatrist, employed by the State to determine future dangerousness, could not be used against a defendant in a criminal trial, because the defendant was not advised of nor did he waive his Miranda rights, nor did he waive his Sixth Amendment right to counsel. Smith, 451 U.S. at 468–69, 101 S.Ct. at 1876.

¶ 11 Courts in Texas and Pennsylvania have applied Estelle v. Smith to situations where social workers investigating child abuse question defendants after they have been arrested for the related criminal conduct. In Cates v. State, 776 S.W.2d 170 (Tex.Crim.App.1989)[6] and Commonwealth v. Ramos, 367 Pa.Super. 84, 532 A.2d 465

---

**4.** Although the State does not claim that earlier Miranda warnings were sufficient, we note that Miranda warnings given before the police interview of October 23rd were too remote in time and Blanton was not given an opportunity to exercise those rights prior to Meyers's questioning.

**5.** See also Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968)(custodial questioning by I.R.S. agent involved in routine tax investigation for civil purposes implicated Miranda.)

**6.** Texas has a more recent case which distinguishes Cates. In Wilkerson v. State, 173 S.W.3d 521, 529–30 (Tex.Crim.App.2005), the court held that unwarned custodial statements to the Child Protective Services agency (other than law enforcement) conducting a parallel investigation are admissible unless the two investigations have converged.

(1987), the courts held that the statements made under such situations cannot be used against the defendant in the criminal proceeding.

¶ 12 Both of these cases involved defendants who were "in custody" for the relevant offenses, for purposes of *Miranda.* The defendants were in custody for the same conduct which the state social workers were investigating. The courts in both cases relied on the fact that the social service agencies had a duty to investigate child abuse and to turn over their findings to law enforcement agencies.[7]

¶ 13 Similarly, in Oklahoma, the Department of Human Services is required to investigate allegations of child abuse and to report findings to the district attorney. 10 O.S. 2001, § 7106. The primary purpose of the DHS investigation is the protection of the child. *Id.*

¶ 14 The protection of the child does not necessarily include the prosecution of abusers. This Court is quite aware of the necessity of frank and open dialog between DHS investigators, parents, victims and accused persons, so that the child protection goal can be achieved. We have no qualms with DHS investigators getting statements related to child abuse; however, when these statements are used in a criminal proceeding, the constitutional rights of an accused must also be protected.

¶ 15 We find that under the specific facts of this case, DHS worker Sarah Meyers was acting as an agent of law enforcement while investigating the allegations of child sexual abuse. She was initially called to assist the police in their investigation of the child sexual abuse before Blanton was arrested. She became part of the investigative team when she was asked to view the living conditions, the crime scene, and then interview the victim. Her investigation was instrumental in the filing of charges against Blanton.

¶ 16 Her questioning of Blanton took place in the county jail, after arrest and was designed to determine what happened between Blanton and the victim. As part of the investigative team, Meyers's questioning amounted to custodial interrogation without the benefit of *Miranda* warnings, just as if the police were conducting the interrogation. Her "child protection" investigation was not so removed from the police investigation that she could be considered as conducting a routine DHS investigation to help solve issues in the family unit. Therefore, under these facts, the statements were not admissible against Blanton in this criminal trial.[8]

■ ¶ 17 However, our finding that Blanton's statements should have been excluded at trial does not end the discussion. We must examine the statements in light of the other evidence introduced in this case to determine if relief is warranted. Blanton's statement to Meyers that the victim came on to him and his admission that he used marijuana could not have endeared himself to the jury. However, we do not believe that the introduction of these statements influenced the finding of guilt.

¶ 18 Blanton had already given a statement to the police implicating himself in the rape of this five year old victim. The victim testified and gave an age appropriate description of what occurred. Her testimony was not unbelievable or so outrageous that it needed to be corroborated; her testimony was consistent with statements she gave soon after the incident occurred. This evidence alone, without Blanton's statements to Meyers, was enough for any rational jury to find Blanton

---

7.  Similarly, courts in New Jersey [*State v. Helewa*, 223 N.J.Super. 40, 537 A.2d 1328 (1988) ]; Washington [*State v. Nason*, 96 Wash.App. 686, 981 P.2d 866 (1999) ]; North Carolina [*State v. Morrell*, 108 N.C.App. 465, 424 S.E.2d 147 (1993) ]; and Maine [*State v. Harper*, 613 A.2d 945 (Me.1992) ] have reached the same conclusions when state social service workers conduct custodial interviews of defendants.

8.  We are not holding that *Miranda* warnings are required for non-custodial questioning by DHS case workers or investigators, nor are we holding that non-custodial, voluntary statements made by defendants to DHS employees are inadmissible in a criminal trial. We emphasize the point that the analysis of this case applies to the specific facts herein, and this case should not be read to limit the powers of DHS in their mission to protect children. Statements taken by DHS workers are, without question, of great importance in protecting children and assisting courts in making placement decisions. We make no determination about whether the statements made by Blanton would be admissible to assist in the child protection mission of DHS.

guilty beyond a reasonable doubt, causing this Court to hold that the finding of guilt was not affected by the inadmissible statements.

¶ 19 Our review of the effect of these statements on the sentence results in a different conclusion. Blanton's admission of marijuana use and utterly arrogant statement that the five year old victim came on to him surely caused him to get a more harsh sentence than he would have otherwise. Based on this conclusion, we order that Blanton's sentence be modified to thirty five (35) years.

¶ 20 In proposition three, we find that there was no request for an instruction that Blanton would be required to serve 85% of any sentence rendered for the rape offense; therefore, we review for plain error only. *Carter v. State*, 2006 OK CR 42, ¶ 5, 147 P.3d 243, 244. Even if this Court were to find that the lack of an 85% instruction amounted to plain error, any further relief above that rendered based on the error found in proposition two would be unwarranted. Therefore, we find that the modification of Blanton's sentence cures any potential error here. In proposition four, we find that Blanton received reasonably effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[9]

## DECISION

¶ 21 The judgment of the District Court is **AFFIRMED.** The matter is remanded to the District Court with instructions to **MOD-IFY** Blanton's sentence to thirty five (35) years. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2007), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LUMPKIN, P.J., C. JOHNSON, V.P.J., CHAPEL and A. JOHNSON, JJ.: concur.

---

9. Even if counsel were ineffective for failing to request an instruction on the 85% rule, no relief above that already granted would be necessary.