**Bruce CASE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–258.**

Court of Criminal Appeals of Oklahoma.

Oct. 12, 1976.

Rehearing Denied Nov. 4, 1976.

620

Sylvia Marks-Barnett, Oklahoma City, Stephen Jones, Jones & Gungoll, Enid, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge.

The Appellant, Bruce Case, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Alfalfa County, Case No. CRF–72–11, of the crime of Arson in the Second Degree in violation of 21 O.S. (1971), § 1402. Punishment was assessed at a fine of Twelve Thousand Dollars ($12,000.00) and a timely appeal was perfected to this Court. In *Case v. State*, Okl.Cr., 519 P.2d 523 (1974) this Court reversed the conviction and remanded the cause for new trial.

At the second trial the jury again found the defendant guilty and punishment was assessed at a term of five (5) years in the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the verdict the defendant has perfected his timely appeal of said second conviction.

As stated in *Case*, supra, the defendant was the manager of an automatic laundry located in Cherokee, Alfalfa County, Oklahoma. Fire broke out in the laundry at approximately 4:00 a. m. on June 28, 1972. The subsequent investigation revealed that within the laundry there had been installed an "elaborate apparatus reminiscent of a Rube Goldberg contraption". At 4:00 a. m. a timing device closed the contacts between wires attached to a 12 volt battery thereby setting off a chain reaction which resulted in the fire. Cardboard tubing made of boxes had been connected to a garden hose which in turn was connected to a natural gas line. According to the expert testimony of Julian Pierce, agent for the State Fire Marshal's Office, had the apparatus worked as designed the natural gas explosion would have demolished the building.

According to witnesses, the apparatus could have been installed only between the time the laundry closed, at approximately 11:00 p. m. on the 27th and 4:00 a. m. on the 28th when the timing device caused the electrical contact. Numerous witnesses testified that prior to the fire the defendant had purchased electrical wire, had been looking for cardboard boxes, was in the market for a used battery, and had access to a model-T coil similar to the one used in the "contraption". It was further established that an air conditioning vent in the laundry had been taped shut prior to the fire and that the defendant had purchased masking tape shortly before the fire. A fingerprint expert testified that he found fingerprints on two sections of the cardboard tubing matching known prints of the defendant.

Delbert Dixon testified that he had been working at the laundry for two or three weeks prior to the fire, his job being to close the laundry so that the defendant could do his farming at night without having to come back to town. On the 27th Dixon met the defendant and he told Dixon to close that evening because he hadn't finished his farm work. Dixon closed at approximately 11:00 p. m. and testified that he did not notice any model-T coils, cardboard boxes or rubber hoses, although he did seem to recall a battery had been on the work bench for a few days. No wires connected the battery to the timer. Kenneth Williams, the manager of a filling station in Cherokee, testified that he closed his station at approximately 12:30 a. m. on the 28th and noticed that the night light at the laundry was out when normally it would have been on. Williams returned to

his station at approximately 1:30 a. m. and saw a pickup pull into a lot approximately 200 to 300 feet from the laundry. He could not describe the pickup because it was dark but was reasonably sure it was dark colored. He further described the defendant's pickup as being light red and white and stated that he was not testifying that the pickup was or was not the defendant's since he was not paying much attention and it was dark.

Alfalfa County Sheriff Delmar Coppock testified that during the course of his investigation he discovered some tire tracks located south of the laundry on the lot described by Williams. A picture was taken of the tire tracks and they matched tires on the defendant's pickup. However, the tracks had no unique features and the tires on the defendant's truck were a standard make.

For the defense Clarence A. Bassett testified that in the latter part of October, 1972, he purchased some real estate from the defendant and received approximately one-half mile of electric fence, a battery and a battery charger.

The defendant then testified in his own behalf stating that the laundry was owned by his brother and that the defendant had no financial interest in it. He further stated that he did his farming at night and hired Dixon to close up around 11:00 p. m. so he wouldn't have to come back into town. He further stated that he had been looking for boxes to use in the laundry but that softdrink boxes similar to those used in the apparatus were of no use to him since they were not deep enough. He further stated that he had purchased tape to tape up packages and to make "out of order signs" and that he purchased wire for his farming operations. He further admitted having a model-T, but stated that the only coils were in the vehicle. On the evening in question he met Dixon and told him to close up since he would be farming. The defendant worked on his farm that night, finishing at approximately 5:45 a. m. He then came into town to open up the laundry and discovered that there had been a fire. He further denied having anything to do with the fire or the construction of the apparatus and that he had no grudge against his brother. The defense then rested.

■ The defendant's first assignment of error contends that the trial court committed reversible error by denying defendant's motion for production of certain items which the defendant believed exculpatory in nature. In particular the defense sought the prosecutor's files concerning four arson charges filed against a Mr. Smith for the reason that Smith had been charged with burning a number of buildings in the Cherokee area said fires involving commercial buildings and having occurred at night.

The record reveals that the trial court considered the motion and that the charges filed against Mr. Smith resulted from fires that occurred at least two years after the laundry fire. The trial court then overruled the motion.

In *State ex rel. Sadler v. Lackey*, Okl. Cr., 319 P.2d 610, this Court held that the defendant has no absolute right of pre-trial inspection or to compel the state to produce documents and reports that may be beneficial to the defense. However, in the interest of justice and for good cause shown, where the denial of pre-trial inspection might result in a miscarriage of justice the trial court has the inherent right in the exercise of sound judicial discretion to grant the remedy of pre-trial inspection. In the instant case it is apparent that the trial court did not abuse its discretion in denying the defendant's request to inspect the Smith files, since the instant case resulted from a fire occurring at least two years prior to the fires alleged to have occurred at the hand of Smith. The defendant's first assignment is without merit.

■ The defendant next urges that the trial court committed reversible error in sustaining the state's motion in limine con-

cerning making references to subsequent arson charges filed against Smith in Alfalfa County.

After a reading of the transcript of the hearing on said motion it becomes evident that the state's motion was to require all participants in the trial and their attorneys to refrain from mentioning either in opening statements, closing argument or during the trial the fact that Smith had been charged in four arson cases resulting from fires set in the summer of 1974, unless there was any direct evidence linking Smith with the laundry fire. The evidence presented at the hearing reveals that Smith was charged with four fires that occurred within a short span of time during the summer of 1974, that Smith himself had reported each fire and that no timing device or incendiary device was used. The trial court in ruling on the motion stated as follows, to-wit:

"THE COURT: I will follow the law, Mr. Jones, it says that it is competent for you to show by any legal evidence that another person committed the crime, but before such testimony can be received there must be proof that some overt act or some connection with it, such train of fact or circumstances that tend to clearly to point out such other person is the guilty party."

In *Quinn v. State*, 55 Okl.Cr. 116, 25 P. 2d 711 this Court held that evidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is, some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than to the accused, as the party guilty of the crime charged. Therefore, in the instant case, it is our opinion that the trial court did not abuse its judicial discretion in ruling on the motion in limine as set out above. The defendant's second assignment is without merit.

The defendant's third assignment of error urges that the trial court erred in denying the defendant's motion to strike the testimony of Sheriff Coppock concerning the comparison of the defendant's tires and certain tire tracks found on an adjacent lot for the reason that they were not distinctive enough to afford a reliable comparison. In support of his contention the defendant argues that the tracks found were the tracks of a type of tire mass produced and found on many pickups and that there were no distinguishing peculiarities, such as cuts. Therefore the evidence presented was unreliable. The record reveals that Sheriff Coppock testified that he found tire tracks some two or three hundred feet away from the laundry on the lot described by Williams, that he photographed the tracks himself with a Polaroid camera and that the tracks were similar to tires found on the defendant's pickup. On cross-examination the sheriff admitted that there was no unique tear or jagged edge which was unique to one of the defendant's tires, that the defendant's tires were a standard make, that any other tire from the same mold would have made the same impression, and that he was not stating that the track was in fact made by the defendant's tire.

In *Allcorn v. State*, Okl.Cr., 392 P.2d 66, this Court citing *Courtright v. State*, 79 Okl.Cr. 270, 154 P.2d 588, held that evidence of tracks are admissible in criminal cases. The weight and credibility to be given to such testimony is a question for the jury alone to determine after taking into consideration all facts and circumstances surrounding the particular case. A witness may not testify to conclusions but may testify to facts established by examination of the tracks. In the instant case Sheriff Coppock did not make any conclusion or give any opinion. He just stated as a fact that the tire track found a short time after the fire was similar to the tires found on the defendant's pickup. It is our opinion that the trial court did not abuse its discretion in allowing the sheriff to tes-

tify concerning the tire track and admitting into evidence the photograph of the track. The weight of said evidence was for the jury to determine. The defendant's third assignment is without merit.

The defendant next contends that the trial court erred in overruling the defendant's demurrer to the evidence made at the end of the state's case because all of the evidence presented to that point raised only a mere suspicion of the defendant's guilt. We disagree. It is obvious that the evidence presented by the state was circumstantial. However, the evidence presented by the state was that the defendant had access to the laundry, a "Rube Goldberg contraption" connected to a timing device and a source of natural gas had been constructed, the defendant's finger print was found on some of the cardboard tubing, the defendant had purchased masking tape and wire similar to that used in sealing an air conditioning vent and wiring a battery to the timing device, the defendant had been in the market for a used battery, the defendant had access to a model-T coil and to cardboard boxes similar to those used to construct the cardboard tubing, tire tracks similar to those made by the defendant's truck were found in a lot close to the laundry, a suspicious vehicle had been seen on that lot prior to the fire, and the building had in fact burned.

In *Logan v. State*, Okl.Cr., 493 P.2d 842, the following language appears.

"While much of the evidence is circumstantial, this Court has often held a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative effect as direct testimony. *Young v. State*, Okl.Cr., 373 P.2d 273. Additionally, circumstantial evidence need not excluse every hypothesis or negate any possibility other than guilt . . ."

It is therefore our opinion that the trial court properly overruled the demurrer as there was sufficient evidence presented by the state to prove a prima facie case of the crime charged.

The defendant's fifth assignment contends that the trial court erred in refusing to reduce the charge to third degree or fourth degree arson because the facts could support a verdict of either. Again, we disagree.

The defendant was charged under the provisions of 21 O.S.(1971), § 1402 which provides as follows:

"Any person who willfully and maliciously sets fire to or burns or by the use of any explosive device or substance destroys in whole or in part, or causes to be burned or destroyed, or aids, counsels or procures the burning or destruction of any building or structure, public or private, other than dwelling houses or contents thereof, the property of himself or another, shall be guilty of arson in the second degree, and upon conviction thereof shall be punished by a fine not to exceed Twenty Thousand Dollars ($20,000.00) or be confined in the penitentiary for not more than fifteen (15) years or both . . ."

Arson in the fourth degree which is defined by § 1404 deals primarily with attempted arson. Third degree arson as defined by § 1403 concerns the burning of personal property having a value in excess of $20.00 or the willful burning of any building or personal property with intent to injure or defraud an insurer. In the instant case the facts presented fit squarely within the provisions of § 1402. The trial court would have abused its discretion in reducing the charge. Said assignment is without merit.

The defendant's sixth assignment urges that the trial court committed reversable error in refusing to submit to the jury the defendant's requested instructions and to submit to the jury instructions on arson in the third and fourth degree. Again we must disagree.

As stated above the evidence presented at trial fit squarely within the elements of the crime charged, arson in the second degree. The defendant denied having anything to do whatsoever with the intention-

ally set fire which destroyed the laundry building. An instruction on third and fourth degree arson was not required in the instant case. The defendant was either guilty of arson in the second degree as defined by Section 1402 or he was innocent.

An examination of the record reveals that the instructions submitted by the trial court, when considered as a whole, fairly and correctly stated the law applicable to the issues presented by the evidence. They were therefore sufficient. See *Stone v. State*, Okl.Cr., 442 P.2d 519.

The defendant's seventh assignment of error contends that the trial court committed reversible error in failing to permit the defendant to waive his right to have the jury set the punishment, the defendant having specifically requested that the trial court assess punishment.

█ In our recent case of *Reddell v. State*, Okl.Cr., 543 P.2d 574, this Court addressed itself to this issue and specifically held that the statutory intent of 22 O.S. 1971, § 926 is to give the jury an opportunity to pass upon the issue of punishment whether or not so requested by the defendant. The defendant may not unilaterally waive the assessment of punishment by a jury which is able to agree.

██ In *Crawford v. Brown*, Okl.Cr., 536 P.2d 988 (1975), in a related matter this Court held that a defendant may not unilaterally waive his right to trial by jury and that any waiver must be joined by the prosecuting attorney and the judge of the trial court. The refusal of either to consent will result in trial by jury. We further held that the state in our adversary criminal justice system has a valid and legitimate interest in trying its cases before that body which history shows and the framers of our Constitutions knew produced the fairest end result—the jury. The rationale of *Crawford* applies also to the instant case. It is therefore our opinion that any waiver by the defendant of the right to have the jury assess punishment upon determination of guilt must be joined

by the prosecuting attorney and the judge of the trial court. The refusal of either to consent to assessment of punishment by the trial court will result in a jury verdict assessing punishment, provided the jury can reach such a verdict. The defendant's seventh assignment is without merit.

█ The defendant next contends that rendition of sentence at the second trial greater than that at the first trial is reversible error since it constitutes a violation of due process of law. In support of his contention the defendant cites *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714.

However, a reading of *Chaffin*, supra, reveals that the United States Supreme Court held that the rendition of a higher sentence by a jury upon retrial does not violate the double jeopardy clause of the United States Constitution nor does such a sentence offend due process so long as the jury is not informed of the prior sentence and the second sentence is not otherwise shown to be a product of vindictiveness. The choice occasioned by the possibility of a harsher sentence does not place an impermissible burden on the right of an accused to appeal or attack collaterally his first conviction. In the instant case, although the jury assessed punishment harsher than that assessed at the first trial there is no evidence of vindictiveness in the record. As stated by the defendant in his brief the trial judge allowed the defendant latitude in his voir dire of prospective jurors and all parties were admonished from mentioning four subsequent arsons committed in the vicinity. The defendant's eight assignment is without merit.

█ Defendant's last assignment of error urges that the trial court erred in failing to direct a verdict of acquittal since the evidence taken as a whole, was insufficient to sustain a conviction. For the reasons set out throughout this opinion the defendant's last contention is without merit. As stated in *Logan*, supra, it is the exclusive province of the jury to weigh the evi-

dence and determine the facts. Where there is competent evidence from which the jury might reasonably conclude the defendant is guilty the case will not be reversed on appeal on a contention that the evidence is insufficient. In the instant case there is competent evidence, although conflicting, from which the jury might reasonably conclude the defendant is guilty.

From examination of the record as a whole it is apparent to this Court that the defendant received a fair and impartial trial before a jury, that no material right of the defendant was prejudiced and the judgment and sentence appealed from should be, and the same is hereby AFFIRMED.

BRETT, P.·J., and BUSSEY, J., concur.