2005 OK CR 14

**Glen Dale GORE, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. D–2003–776.

Court of Criminal Appeals of Oklahoma.

Aug. 29, 2005.

As Corrected Aug. 30, 2005.

David Smith, Ken Adair, Norman, OK, counsel for appellant at trial.

William Peterson, District Attorney, Richard Wintory, Lynn Loftis, Assistant District Attorneys, Oklahoma City, OK, Chris Ross, Assistant District Attorney, Ada, Oklahoma, counsel for the State at trial.

Gloyd L. McCoy, Oklahoma City, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, counsel for the State on appeal.

### OPINION

LUMPKIN, Vice–Presiding Judge.

¶ 1 Appellant Glenn Dale Gore was tried by jury and convicted of First Degree Murder (21 O.S.1981, § 701.7), Case No. CF–2001–126, in the District Court of Pontotoc County. The jury found the existence of three aggravating circumstances and recommended the punishment of death. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.[1]

¶ 2 Appellant was convicted of the 1982 murder of twenty-one year old Debra Sue Carter in Ada, Oklahoma. During the fall of that year, Carter moved into a garage apartment and worked three jobs to support herself. One of her jobs was as a bartender/waitress at the Coach Light Club in Ada.

¶ 3 Appellant was a regular patron at the Coach Light Club and was there the night of December 7, 1982. Business was slow that night so the club closed early. Carter was last seen in her car in the parking lot talking to Appellant who stood outside her car. Some of the people leaving the club saw nothing out of the ordinary in Carter and Appellant talking. Others saw Carter push Appellant away in order to close her car door and drive off. Carter left the club alone and drove home. Appellant went back inside the club and subsequently left with Ron West, who had earlier given Appellant a ride to the club. Appellant and West went to the Waffler restaurant where they ate breakfast. Once they were finished, Appellant asked West to drive him to his mother's home. Following Appellant's directions, West drove toward the west part of town. Appellant told West he did not need to take him all the way to his mother's home and he asked to be let out at a nearby church. West complied, and watched Appellant walk around his car and head in a westerly direction.

¶ 4 In the meantime, several of those leaving the Coach Light Club went home with Gina Vietta to continue their party. Vietta, Carter's friend, asked Carter to join them but she declined. Between approximately 2:30 a.m. and 3:00 a.m., Vietta received a

---

1. Appellant's Petition in Error was filed in this Court on December 18, 2003. Appellant's brief was filed August 10, 2004. The State's brief was filed December 20, 2004. The case was submitted to the Court December 23, 2004. Oral argument was held April 19, 2005.

phone call from Carter asking her to come and pick her up at her apartment because someone was there who made her uncomfortable. Vietta asked who was there with her, but Carter did not immediately respond, telling Vietta to "hold on". Vietta then heard muffled noises over the phone and told Carter she was on her way. However, before Vietta could leave, Carter phoned again and said she had decided to stay home. When Vietta again asked who was there with her, Carter changed the subject and told Vietta to phone her in the morning so she would not be late for work.

¶ 5 At approximately 11:20 a.m., December 8, 1982, Donna Johnson went to visit Carter, her long-time friend. Johnson stepped in glass as she walked up the stairs to Carter's apartment. She noticed the front screen door to the apartment was open and the window in the wooden front door had been broken out. Johnson heard the radio playing and found the front door unlocked. When Carter did not answer, Johnson looked inside and saw the apartment in disarray. Sofa cushions and clothes were strewn on the floor. Written on a wall was "Jim Smith next will die". Written on the kitchen table was "don't look fore us or ealse" (sic). The victim's jeans and a blouse were found on the kitchen floor.

¶ 6 The victim's bedroom showed signs of a struggle. Her bed was out of place, pushed up toward the door to the bedroom almost to the point of blocking entry to the room. The comforter and sheets from the bed were on the floor. The victim's bra and panties were also found on the floor. The panties had one leg torn completely through. A bloody palm print was discovered on the wall approximately eighteen (18) inches from the floor. Carter was found on the floor on the far side of the bedroom, lying on her stomach, nude except for one sock covered foot. On her back was written "Duke Graham" in ketchup. Shampoo residue appeared to be on her buttocks. On her chest was written "DIE" in fingernail polish. A blood-soaked washcloth was stuffed into her mouth and down her throat. A belt and an electrical cord from an electric blanket were found underneath the body. Next to the body was a crumpled bed sheet. Wrapped inside the sheet was a ketchup bottle with the lid missing. Also found on the floor near the body was a shampoo bottle with the lid missing. A bracelet was found on the victim's wrist and money was found on the floor of the bedroom.

¶ 7 During the subsequent autopsy, numerous fresh bruises and scrapes were found on the victim's face—on her forehead, above her right eye, along her right cheek, along the left side of her mouth, under her chin, and on the back of her neck. Bruises and bite marks were found inside her mouth and on her tongue. A narrow ligature mark was found around her neck. Fresh bruises were also found on her chest, arms, hips, knees, and on the inside and outside of her thighs. Fresh bruises were found around her vaginal area. Intact sperm were found in her vagina and rectum. Also, the lid to a ketchup bottle was found in her anal canal. The washcloth in her mouth was found to have been pushed down her throat blocking her airway. The medical examiner testified that all of the victim's injuries were inflicted prior to her death. He determined the cause of her death was asphyxiation from the ligature strangulation.

¶ 8 Testimony from an expert on crime scene reconstruction showed a substantial amount of time had been taken by the perpetrator to "stage" the crime scene to make it look as though two (2) people were involved in the crime. Evidence offered to support this testimony included glass broken both on the inside and outside of the window in the apartment front door, and the writing on the victim, on the wall and on the kitchen table.

¶ 9 In 1988 Ronald Williamson and Dennis Fritz were convicted of the murder of Debra Carter. Consistent with police interviews immediately after the crime, Appellant testified at the preliminary hearing for Williamson and Fritz that on the night of the murder Carter had asked him to dance with her because Williamson was bothering her. Ap-

pellant was the only witness to place Williamson and Carter together the night of the homicide. By the time of Williamson's trial, Appellant was incarcerated on an unrelated offense and therefore unavailable to testify. His preliminary hearing testimony was read to the jury. Upon being convicted, Williamson was sentenced to the death penalty and Fritz was sentenced to life imprisonment.[2] In 1997, Williamson's conviction was reversed by the Tenth Circuit Court of Appeals and the State was ordered to retry him or permanently release him from custody. *See Williamson v. Ward,* 110 F.3d 1508 (10th Cir. 1997).

¶ 10 In preparation for a possible new trial, samples of hair and bodily fluids taken from Williamson and Fritz were submitted for the newly available DNA analysis. Williamson's defense counsel, Mark Barrett, also sought to interview Appellant and obtain samples for DNA testing. Barrett interviewed Appellant at the Lexington Correctional Center where Appellant was incarcerated. Barrett informed Appellant that DNA evidence was being developed to exonerate Williamson. Appellant refused Barrett's request to provide samples of his hair and bodily fluids for DNA testing. Barrett also asked Appellant about his earlier claims against Williamson. During several conversations with Barrett, Appellant repudiated his earlier testimony with statements ranging from he didn't know if Williamson was at the Coach Light the night of December 7, to Williamson was not at the club that night, to he didn't know if Williamson was there or not.

¶ 11 The results of the DNA testing excluded Williamson and Fritz as the donors of

the sperm found in the victim and the case against them was ultimately dismissed. On the same day the DNA results were made public, Appellant walked away from his work release detail in Purcell, Oklahoma. Approximately one week later, Appellant contacted an attorney and turned himself in to authorities. Subsequent DNA testing of samples taken from Appellant showed he was the donor of the sperm found inside the victim. Appellant was subsequently charged with, and convicted, of Carter's rape and murder.

¶ 12 Having thoroughly reviewed Appellant's allegations of error and the entire record in this case, we find relief is warranted based upon the first assignment of error. Appellant contends the trial court erred in sustaining the State's Motion *in Limine* prohibiting the defense from presenting any evidence tending to show that Williamson and Fritz or Ricky Simmons committed the crime. Prior to trial, Appellant filed an offer of proof listing 19 witnesses.[3] This proffered evidence consisted of Williamson's confession to the murder, and testimony from witnesses who overheard Williamson admit to the killing; police reports concerning the proximity of the victim's apartment to that of another woman whom Williamson had beaten and sexually assaulted; testimony from witnesses that the victim believed Williamson was going to kill her; and Williamson's conviction and death sentence for the victim's murder. Appellant asserts the exclusion of this evidence denied him due process and the right to put on a defense.

¶ 13 As early as 1915, this Court held that a defendant may show, by any legal

---

2. The convictions were affirmed by this Court in *Williamson v. State,* 1991 OK CR 63, 812 P.2d 384 and *Fritz v. State,* 1991 OK CR 62, 811 P.2d 1353.

3. In his proposition of error, Appellant includes Ricky Simmons as an alternative suspect. However, the Offer of Proof filed by the defense listed only witnesses who would testify regarding Williamson and Fritz as alternative suspects. While the State's response includes a response to an offer of proof concerning Ricky Simmons, Appellant's offer of proof regarding Simmons is not in the record. In a transcript of a pre-trial conference addressing evidence of alternative suspects, defense counsel states that Simmons confessed to

the crime and that he cannot be excluded as the donor of one of the hairs at the crime scene. At trial, a verbal offer of proof was made by defense counsel that a partial DNA profile of Simmons was consistent with two out of three "genetic loci" of one hair found at the crime scene. (Tr. Vol.VI, pg.112). Based upon this record, the evidence as to Ricky Simmons as an alternative suspect does not sufficiently connect him to the commission of the crime and affords no reasonable presumption or inference as to Appellant's guilt or innocence. Therefore, the trial court did not abuse its discretion in excluding any evidence as to Ricky Simmons as an alternative suspect.

evidence, that some other person committed the crime with which he is charged, and that he is innocent of any participation in it. *Irvin v. State*, 11 Okla.Crim. 301, 146 P. 453 (1915).[4] However, that evidence must tend to connect such other person with the commission of the crime charged. *Id.* Evidence, which can have no further effect than to cast a bare suspicion upon another is incompetent and inadmissible. *Id.* In support of this principle, this Court relied in part on *Horn v. State*, 12 Wyo. 80, 73 P. 705 (1903). Quoting extensively from *Horn*, this Court stated in part:

It is urged that the court erred in these various rulings, and to support the contention the rule is invoked that, where the state depends on circumstantial evidence to convict a defendant, any testimony tending to show that some other person committed the crime is admissible. Counsel state the rule broader than that, and insist that testimony may be introduced tending to show that another person may have committed the crime; and the rule is so stated by some courts. But we think it is not generally or usually held that facts are competent which have no further effect than to cast a bare suspicion upon another. It is generally conceded that a defendant in a criminal case may, for the purpose of establishing his own innocence, prove such facts as tend to show that another is the guilty party, where the identity of the one committing the crime is a material point in issue.... One of the prominent rules of evidence is that it must tend to prove the issue. It is not necessary that every fact should bear directly upon the issue, but it becomes admissible if it tends to prove the issue, or constitutes a link in the chain of proof. The rule excludes all evidence of collateral facts which are incapable of affording any reasonable presumption or in-

ference as to the principal fact or matter in dispute, and the tendency of which is to divert the mind from the point in issue, and to excite prejudice and mislead or confuse the jury. 1 Greenleaf on Ev. §§ 51, 52;

146 P. at 465.

¶ 14 The *Horn* Court compared case law from other jurisdictions and noted that evidence of mere threats against the life of the deceased, without more, was not generally held to be competent, for the reason that it has no legal tendency to establish the innocence of the defendant on trial. *Id.* Further, the *Horn* Court noted the existence of ill feeling as a motive for the commission of crime will not alone justify admission of the evidence. *Id.* Ill feelings become material only when offered in connection with other evidence proper to be submitted, showing that the person charged with such ill feeling was in fact implicated in the commission of the crime. *Id.* Additionally, admissions or confessions of a third party, not under oath, would not be admissible as such statements would only be hearsay. The Court noted that such "proof must connect such third person with the fact; that is, with the perpetration of some deed entering into the crime itself. There must be proof of such a train of facts and circumstances as tend clearly to point to him, rather than the prisoner, as the guilty party." *Id.* The *Horn* Court concluded, "it is evident that no precise rule can be laid down to govern the admission of such evidence in all cases. Much must depend upon the circumstances of the case, as well as the character of the evidence offered." *Id.*

¶ 15 Despite the passage of over nine decades, the law in this respect has changed little if any. The issue was recently addressed in *Dodd v. State*, 2004 OK CR 31, 100 P.3d 1017, wherein this Court said:

4. In *Irvin*, two children died when an explosion occurred underneath their house and the house burned to the ground. At trial, Irvin attempted to show the children's stepfather, Zeb Mackey, committed the crime. The only evidence offered in support of this theory was that Mackey intended to leave his wife and children and promised to get some money and leave the country with another woman whose child he had fathered. This Court held such evidence was inadmissible, as it "affords no reasonable presumption or inference as to the guilt or innocence of the defendant". 146 P. at 466.

Regarding evidence of alternative suspects, we have held: [E]vidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused. . . . [It is] not enough to show a possible motive on the part of another; the evidence must show an overt act by the third person toward the commission of a crime. *Woodruff v. State,* 1993 OK CR 7, ¶ 47, 846 P.2d 1124, 1137, *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993).

2004 OK CR 31, ¶ 42, 100 P.3d at 1032–33.

¶ 16 In *Dodd,* the defendant proffered evidence concerning one of the victim's drug purchases, gambling activities, and financial worries in the months preceding his death. This, along with various other pieces of evidence, was offered in the guilt stage to show the possibility that someone else may have killed the victims. This Court upheld the trial court's refusal to admit such evidence as it did not establish an overt act by a third party, and it failed to establish an identifiable third party with a motive to harm either victim. The Court found that several pieces of evidence proffered by the defense were inconsistent with other pieces of evidence. The Court concluded, "[b]ecause the evidence did not point in any particular direction or to any particular person, it amounted only to evidence of the victim's bad character, and as such, was inadmissible". 2004 OK CR 31, ¶ 43, 100 P.3d at 1033.

¶ 17 In *Woodruff* and his companion case *Romano v. State,* 1993 OK CR 8, 847 P.2d 368, *cert. granted in part* and *affirmed,* 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994), the defense sought to admit evidence of three other possible perpetrators of the murder. In *Romano,* we stated:

In *Quinn v. State,* 55 Okl.Cr. 116, 25 P.2d 711 (1933) this Court held that evidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused. *See also Case v. State,* 555 P.2d 619, 623 (Okl.Cr.1976). We addressed this issue again in *Tahdooahnippah v. State,* 610 P.2d 808, 810 (Okla.Cr.1980), and stated that it was not enough to show a possible motive on the part of another; the evidence must show an overt act by the third person toward the commission of a crime.

1993 OK CR 8, ¶ 45, 847 P.2d at 381.

¶ 18 The three alleged alternative perpetrators in *Romano* and *Woodruff* were Babbit, Ford, and Ballard. Babbitt could only be connected with the victim as an acquaintance from a local club, and police were never able to verify any actual person known to be (Kathy) Ford. Ballard was shown to have frequented the same pool hall as the victim and was seen with cash and jewelry after the murder, although he was known to be destitute. This Court found none of the evidence showed an overt act by Ballard in the commission of the murder.

¶ 19 In another of the more recent cases, *Dennis v. State,* 1994 OK CR 34, 879 P.2d 1227, the defendant was convicted of killing his wife. Bone fragments identified as belonging to the victim were found in piles of burned cedar trees on the defendant's ranch. In his defense, the defendant sought to admit evidence that the victim's boyfriend, Umbenhower, had a motive to kill her and burn her body. This Court upheld the trial court's rejection of such evidence stating:

. . . "evidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused." *Woodruff v. State,* 846 P.2d 1124, 1137

(Okl.Cr.1993). Further, it is not enough to show a possible motive on the part of another, "the evidence must show an overt act by the third person toward the commission of a crime." *Id.*

1994 OK CR 34, ¶ 15, 879 P.2d at 1232.

¶ 20 This Court found that despite evidence of a sexual relationship between the victim and Umbenhower, a videotape found in the victim's vanity which allegedly depicted a woman who was shackled, bound, strangled and burned did not tend to clearly point to Umbenhower as the possible killer rather than Appellant. The Court stated:

The premise that the video tape presented a possible motive on the part of Umbenhower is tenuous at best. However, there is no evidence of any overt act by Umbenhower toward the commission of the murder. Under these circumstances, the videotape cannot be found to have made the possibility that Umbenhower killed Janet Dennis more or less probable than it would have been without it. Accordingly, it was not an abuse of discretion for the trial court to refuse to admit the videotape into evidence.

1994 OK CR 34, ¶ 16, 879 P.2d at 1232.

¶ 21 This Court's jurisprudence in the area of law referred to as "third party perpetrator" or "alternative suspects" is consistent with constitutional principles. The Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). Few constitutional rights are more fundamental than that of an accused to present witnesses in his own defense. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Id.*

¶ 22 Appellant asserts his proffered evidence met the overt act requirement. However, he also argues the requirement is too strict and unconstitutional. The State disagrees with Appellant and asserts that as the case against Williamson was circumstantial, there is no evidence of an overt act on Williamson's part. The State argues Appellant's proffered evidence raises only a possibility that Williamson and Fritz committed the murder. Further, the State argues the overt act requirement is constitutional and does not deny a defendant the right to present all competent relevant evidence in support of his defense.

¶ 23 These arguments show that both the defense and the State have read our case law too narrowly. While recent cases have tended to emphasize the existence or nonexistence of an overt act in furtherance of the crime, the test to determine the admissibility of alternative suspect evidence is much broader. As stated above, before evidence tending to show that another party might have committed the crime would be admissible, "the evidence offered must connect such other person with the fact; that is, some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than to the defendant, as the guilty party"[5], "there must be such proof of connection with it, such a train of facts or circumstances, as tend clearly to point out some one besides the prisoner as the guilty party. Remote acts, disconnected, and outside of the crime itself, cannot be separately proved for such a purpose"[6], and "there must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused."[7] Accordingly, proof of an overt act in the

5. *Quinn v. State*, 55 Okla.Crim. 116, 25 P.2d 711, 714 (1933).

6. *Irvin v. State*, 11 Okla.Crim. 301, 146 P. 453 (1915) citing *In the case of Greenfield v. People*, 85 N.Y. 75, 39 Am. Rep. 636 (1881).

7. *Case v. State*, 1976 OK CR 250, ¶ 14, 555 P.2d

commission of the crime is required, but it is as a threshold showing, and not as the sole determining factor. It is only one of the factors to consider in determining if the evidence sufficiently connects the third party to the crime.

 ¶ 24 As our test for determining the admissibility of third party perpetrator evidence is based upon more than the single finding of an overt act in the commission of the crime, the standard is not too strict and is consistent with constitutional principles. It does not prevent the defendant from presenting a defense or presenting evidence that another person may have committed the crime as long as there is some quantum of evidence, which is more than mere suspicion and innuendo, that connects the third party to the commission of the crime. It does not directly control the scope of defense counsel's argument to the jury and counsel is allowed to argue any inference that can be fairly drawn from the evidence. Accordingly, we reject Appellant's suggestion we abandon our test.

 ¶ 25 Convictions obtained in a court of law and based upon a trier of facts' findings of guilt beyond a reasonable doubt raise much more than a "possibility" that the convicted defendant committed the charged crime. A conviction is much more than suspicion, speculation, and innuendo that the convicted defendant committed the crime. In the absence of newly discovered evidence exculpating the convicted defendant, or a ruling by a higher court reversing the conviction, a conviction stands as proof the convicted defendant committed the charged crime.

¶ 26 Accordingly, evidence that Williamson was convicted of the crime for which Appellant now stands convicted is relevant as it has a tendency to establish the guilt or innocence of Appellant. *See* 12 O.S.2001, § 2401 (relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be

without the evidence). Further, the conviction connects Williamson with the murder and is not too remote or disconnected to the commission of the crime. While there may not be a single identifiable overt act toward the commission of the crime, the evidence comprising the case against Williamson was evidence of acts or circumstances that tend clearly to point to Williamson, rather than Appellant, as the killer. This evidence included Williamson's statement to the authorities that he had a dream wherein he killed the victim, statements by law enforcement authorities and inmates who overheard other admissions to the crime made by Williamson, and statements by individuals that the victim had indicated Williamson had asked her for a date but she did not want to go out with him. Therefore, under the facts of this particular case, Williamson's prior conviction for the victim's murder meets the requirement of an overt act in the commission of the crime. Further, this threshold showing combined with the offer of proof presented to the trial court is sufficient to raise the defense that an alternative suspect committed the murder.

¶ 27 In its response, the State acknowledges that it had promoted the case against Williamson for almost twenty years. However, the State argues "the evidentiary landscape" has dramatically changed since Williamson's trial and the validity of that conviction has been put into question.

¶ 28 Williamson's conviction was overturned because the Tenth Circuit Court of Appeals determined he had received ineffective assistance of counsel in violation of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 110 F.3d at 1523. Subsequent DNA analysis showed that the sperm found in the victim did not belong to Williamson. Without question, the validity of Williamson's conviction has been put into doubt. However, under the facts of this case, that conclusion does not strip away all relevance of the conviction to Appellant's case. The State correctly argues that "advancements in technology has allowed foren-

619, 623.

sic science greater powers of discrimination, resulting on the one hand with stronger evidence of guilt and on the other, surer proof to exonerate." As the application of DNA analysis in the criminal justice system has progressed, we have seen that technology can tell us who was in intimate contact with the victim, and the approximate time of that contact. However, in cases like the one before us where the identity of the actual killer is an issue, DNA analysis has not yet evolved to the point where it can identify who committed the actual life ending acts upon the victim. Williamson's conviction was based upon several pieces of evidence. While pieces of that evidence have been discredited, others have not. Therefore, not only is the conviction relevant, but the reversal and reasons for the reversal are also relevant.

¶ 29 Therefore, as evidence of Williamson's conviction for Debra Carter's murder pointed in a particular direction and to a particular person as an alternate suspect in the murder, it was relevant to Appellant's guilt or innocence. The trial court abused its discretion in denying admission of the evidence.

 ¶ 30 Although the error in this case affected a constitutional right, it is subject to a harmless error analysis. *See Bartell v. State,* 1994 OK CR 59, ¶ 15, 881 P.2d 92, 97 (right to present a defense and cross-examine witnesses not one of three constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error). Before a federal constitutional error can be held harmless, this Court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Id.,* 1994 OK CR 59, ¶ 13, 881 P.2d at 97, *citing Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). The question is whether there is a reasonable possibility that the evidence complained of

might have contributed to the conviction. *Id.* 1994 OK CR 59, ¶ 13, 881 P.2d at 96.

 ██ ¶ 31 Despite the trial court's rulings on the State's Motion *in Limine* and the defense's Offer of Proof, Williamson's and Fritz's names came up frequently at trial.[8] That they were originally convicted of the murder was brought out by the State during *voir dire.* The State even introduced evidence that Williamson had been excluded by DNA analysis as the donor of the sperm found in the victim. Several of the State's witnesses had testified at Williamson's trial and defense counsel cross-examined them on any inconsistencies in their testimony. To prevent Appellant from introducing evidence of Williamson's conviction denied Appellant the right to fully present his defense that despite the results of the DNA analysis Williamson was the actual perpetrator. Further, Appellant was hampered in his effort to rebut the State's evidence that Williamson and Fritz did not commit the crime. Under the unique facts of this case, where the circumstances surrounding Williamson's prosecution for the murder and Appellant's prosecution for the murder are so intertwined, the trial court's exclusion of the evidence of Williamson's conviction failed to present the entire story surrounding the crime to the jury. In order to ensure a fair trial, Appellant is entitled to present the evidence of Williamson's conviction as evidence that someone other than himself committed the crime, and under proper instruction from the bench, let the jury determine the weight and credibility of that evidence.[9]

¶ 32 The State presented a strong case against Appellant. However, as much of their evidence was circumstantial, we find there is a reasonable possibility that exclusion of the evidence of Williamson's conviction might have contributed to the conviction.

---

8. The trial court granted the State's Motion *in Limine* during pre-trial proceedings but did not enforce its ruling as to the State during trial. Trial courts should be consistent in administering their rulings equally as to all parties during the course of the trial.

9. This does not mean a complete retrial of Williamson's case. Only those matters relevant to Appellant's defense, and within the bounds of the rules of evidence, are to be presented. Further, "alternate suspect" evidence is subject to rebuttal by the prosecution regarding its weight and credibility.

Appellant was denied a fair trial in accordance with traditional and fundamental principles of due process. Therefore, we find the exclusion of the evidence was not harmless beyond a reasonable doubt. Accordingly, the Judgment and Sentence is **REVERSED** and this case is **REMANDED** to the District Court for a **NEW TRIAL**.

S. TAYLOR, Assigned Justice: concurs.

C. JOHNSON, J.: specially concurs.

CHAPEL, P.J., and A. JOHNSON, J.: concur in results.

CHAPEL, Presiding Judge, concur in results.

¶ 1 I concur in reversing the conviction in this case and in remanding for a new trial. I would, however, explicitly abandon the "requirement" of proof of an overt act in admissibility determinations concerning third party perpetrator evidence. Certainly, there should be "some quantum of evidence, which is more than mere suspicion and innuendo, that connects the third party to the commission of the crime."[1] However, as this case shows, that is all that ought to be required.

¶ 2 If the State is allowed, as it should be allowed, to convict someone upon circumstantial evidence without the requirement that it prove an overt act, I see no reason to deny a person, in defense, the right to present circumstantial evidence without proof of an overt act, that a third party committed the crime. In determining the admissibility of such evidence, I would apply the test set forth above.

¶ 3 I am authorized to state that Judge Arlene Johnson joins in this concur in result opinion.

C. JOHNSON, J., specially concurs.

¶ 1 This is clearly a case where excluded evidence certainly could have helped the Appellant. A previously convicted party knew too many things that were not common knowledge. He may well have been involved in some fashion in the crime. Therefore, the exclusion of the evidence was prejudicial to Appellant and was clear error.

¶ 2 Oklahoma's overt act rule, addressed in the separate writings, can be addressed another day.

A. JOHNSON, Judge, concur in results.

¶ 1 The majority opinion states that this court has been consistent for nine decades in holding that a defendant cannot put on evidence that someone else committed the crime without first showing that the other person took some overt act toward the commission of that crime. Nine decades of jurisprudence, however, contains little if any analysis of the reason behind Oklahoma's narrow rule.

¶ 2 The majority traces the overt act rule to *Irvin v. State*, 11 Okla.Crim. 301, 146 P. 453 (1915). Irvin was convicted of murder arising out of a conspiracy and Irvin sought to introduce evidence that someone else had a motive to commit the crime. *Irvin* was cited early on as holding a defendant may not present evidence incriminating someone else absent a showing of an overt act by that person. This interpretation is a far too narrow reading of the *Irvin* opinion which states:

> While it is competent for the defendant to show, by any legal evidence, that some other person committed the crime with which he is charged, and that he is innocent of any participation in it, such evidence must tend to connect such other person with the commission of the crime charged. An examination of the authorities will show that it is generally held that evidence which could have no further effect than to cast a bare suspicion upon another is incompetent and inadmissible.

*Irvin*, 146 P. at 464.

¶ 3 While an overt act by another toward the commission of the crime charged is one

---

1. Majority opinion, pg. 1276.

example of evidence which may be competent and admissible on behalf of the defendant, it is not the only example of such evidence. *Irvin* did not endorse a rule requiring proof of an overt act, but used proof of an overt act as an example of a circumstance tending to make the evidence of a third party perpetrator substantial enough for admission at trial. *See Irvin* at 465–66. The *Irvin* court quoted at length from *Horn v. State*, 12 Wyo. 80, 73 P. 705 (1903), strongly approving the reasoning of the Wyoming court on the admissibility of alternate suspect evidence, and that court did not adopt the overt act rule.

¶ 4 The overt act rule may appear to give the overworked trial judge a concrete guideline by which to measure the admissibility of alternate suspect evidence. Yet there has been little discussion in our cases of what constitutes an overt act in this sense or of whether such act must be proved by direct evidence. Without such development, clarity may well be an illusion, leaving the trial court to the same arduous weighing process required by jurisdictions without the overt act rule.

¶ 5 The purported ease of application, however, is outweighed by the fact that the rule as constituted has the potential, as in this case, to prevent a defendant from presenting evidence critical to his defense. The defendant's right to present evidence is not absolute and the State may place reasonable limitations on the admission of evidence in criminal proceedings. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Nonetheless, the right to present witnesses to establish a defense is a fundamental element of due process and state evidence rules must yield to this fundamental right when they plainly interfere with a defendant's right to defend against the State's charges. *Id.*

¶ 6 This case demonstrates the dilemma created by our evidentiary rule on this issue. Evidence of another's culpability may be relevant to the defendant's innocence, competent and admissible, even substantial, but still be excluded because the trial court can find no direct evidence of an overt act. Thus, I concur that this case must be reversed and remanded for new trial, but I would abrogate the requirement that a defendant provide evidence of an overt act before alternate suspect evidence may be admitted.

¶ 7 The judgment and Sentence having been REVERSED AND REMANDED TO THE DISTRICT COURT FOR A NEW TRIAL, now pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2005), the MANDATE is ORDERED issued upon delivery and filing of this decision.

¶ 8 I am authorized to state Judge CHARLES S. CHAPEL joins in this opinion and concurs in result.